(754 P.2d 465)

No. 61,092

JOHN C. RIDDLE, III, *Appellant,* v. CITY OF OTTAWA, KANSAS, and OREN K. SKILES, *Appellees.*

Petition for review denied July 8, 1988.

Opinion filed May 20, 1988.

*James E. Rumsey*, of Lawrence, for the appellant.

*W. Terry Fitzgerald*, of Niewald, Waldeck, Norris & Brown, of Overland Park, for the appellees.

Before ABBOTT, C.J., ELLIOTT, J., and THEODORE B. ICE, District Judge, assigned.

ABBOTT, C.J.: The trial court granted summary judgment against the plaintiff, John C. Riddle, III. He appeals.

Riddle brought this action under 42 U.S.C. § 1983 (1982) against the City of Ottawa and Oren K. Skiles, the director of the Department of Public Safety for Ottawa. Riddle's petition alleged violations of his property interests under the Fourteenth Amendment, and his liberty interest in free speech under the

First Amendment. Riddle, an employee of the Department of Public Safety, had been given a ten-day suspension without pay after he wrote a letter outlining certain grievances with the Department and sent it to the Ottawa City Commission, allegedly at the request of a city commissioner.

The rules concerning summary judgment are well known to this court and need not be repeated. See *Richardson v. Northwest Central Pipeline Co.*, 241 Kan. 752, 756, 740 P.2d 1083 (1987).

## A. Property Interest

Riddle argues he had a protected property and liberty interest which could not be taken without due process. Defendants argue that Riddle did not have a cognizable property interest in continued employment under the Fourteenth Amendment because he was suspended without pay and not discharged. Assuming Riddle has a property interest in public employment, temporary suspensions without pay are not de minimus and do implicate protected property interests. See *Bailey v. Kirk*, 777 F.2d 567, 575 (10th Cir. 1985), and cases cited therein.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." *Board of Regents v. Roth*, 408 U.S. 564, 569-70, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972).

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577.

Riddle's interest in not being suspended without pay is a " 'property interest' for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972). In *Bishop v. Wood*, 426 U.S. 341, 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1976), the United States Supreme Court said that a property interest in employment could be created by ordinance, but the sufficiency of the claim of entitlement had to be decided by reference to state law.

In Kansas, the law regarding a public employee's property

right in continued employment is that "the tenure of any office not provided for in the constitution may be declared by statute, and when not so declared such office shall be held at the pleasure of the appointing authority. 'Kansas law clearly establishes the incumbent to a public office enjoys no *property* or *vested interest* in public office.' " *Stoldt v. City of Toronto,* 234 Kan. 957, 964, 678 P.2d 153 (1984).

In *Stoldt,* the Supreme Court found the applicable state law to be K.S.A. 15-204, which provided that the mayor, with the city council's consent, could appoint certain officers, such as policemen, and other officers deemed necessary. A majority of the council members could remove any officer.

The Supreme Court noted that the statute did not provide for any term of office, and that it allowed a majority of the council members to remove any officer at will. The court held, based on the statute, that plaintiff did not have a constitutionally protected property right in his job as night watchman.

The City of Ottawa has a population of over 11,000 and is incorporated under the statutes of Kansas as a second class city operating under the city manager form of government. Cities operating under this form of government are subject to the provisions of the City Manager Plan Act, K.S.A. 12-1001 *et seq.* K.S.A. 12-1011 provides that "[t]he administration of the city's business shall be in the hands of a manager. The manager shall be appointed by the commission, and shall hold office at the pleasure of the board." K.S.A. 12-1014 gives the city manager the power to "appoint and remove all heads of departments, and all subordinate officers and employees of the city." Ottawa City Code § 2-204 (1982), relating to the duties of the manager, duplicates the language of the statute.

K.S.A. 12-1014, which is applicable to the present case, does not provide for any term of office for city employees. Additionally, the statute does not place any limitation on the city manager's power to remove an employee from office. The power to remove includes the power to suspend. There is no requirement in 12-1014 that a city manager have or give cause before he or she can remove/suspend a city employee from office.

Section 2 of Article 15 of the Kansas Constitution provides, in part:

"The tenure of any office not herein provided for may be declared by law; when not so declared, such office shall be held during the pleasure of the authority making appointment . . . ."

In *Piper v. City of Wichita*, 174 Kan. 590, 601, 258 P.2d 253 (1953), the Supreme Court noted:

"The city manager statute provides a comprehensive and all-inclusive form of government for cities that adopt it. It fully covers the field. In the absence of direct legislative mandate this court will not deprive the city manager of any power or relieve him from any responsibility the statute places on him."

Riddle does not have a constitutionally protected property right in his job as a public safety officer for the City of Ottawa. He cannot point to any state statute, city code, or contract which addresses the duration of his employment or the criteria for his suspension. Therefore, he was not entitled to procedural due process before he was suspended for ten days without pay.

Riddle argues he was a permanent employee who could only be disciplined for cause under the express provisions of the Ottawa Personnel Regulations. He argues that these rules and regulations provide the basis for his legitimate claim of entitlement to continued employment. A copy of these rules 'and regulations has not been included in the record on appeal and, thus, the issue is not reviewable. In any event, the trial court considered the personnel rules and regulations and made a specific finding that "[a]ny employee may be subject to disciplinary action including demotion, suspension, warning or dismissal for cause." These rules and regulations are not state law, however, and cannot override the clear provisions of K.S.A. 12-1014 or Ottawa City Code § 2-204. We note this same issue was before the federal district court in *Wulf v. City of Wichita*, 644 F. Supp. 1211, 1221-22 (D. Kan. 1986), where the court noted:

"Section 2.08.090 of the Code of the City of Wichita provides that the city manager shall remove employees. No language in the ordinance establishes either a duration of employment for city employees or criteria for the removal of such employees. The provisions of the ordinance create no legitimate claim of entitlement to continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 48 L. Ed. 2d 684 (1972).

. . . .

". . . . While the City's personnel policy manual provides the accepted reasons for dismissal of employees, it does not state any limits on the duration of

employment. Furthermore, the manual does not give rise to any valid expectation of continued employment because it is the unilateral expression of the City's personnel policies. The Kansas rule remains that an employment manual, that is only a unilateral expression of company policy and is not bargained for, cannot alone be the basis of an employment contract."

The trial court did not err in granting summary judgment to defendants on this issue.

## B. Freedom of Speech

Riddle alleged he was suspended for ten days without pay because he sent a letter to the City Commission outlining his grievances with the Department of Public Safety. This letter was allegedly sent at the request of a city commissioner, and evidence is in the record that the city manager also solicited grievances. The law has been clear ever since *Pickering v. Board of Education*, 391 U.S. 563, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968), that a state cannot dismiss a public employee for exercising his or her right to speak out on issues of public concern. To allow a governmental unit to discharge a person because of his or her constitutionally protected speech would have an inhibiting effect on the exercise of that freedom. See *Perry v. Sindermann*, 408 U.S. at 597. To allow a governmental unit to suspend a public employee without pay for exercising his or her right to speak on matters of public concern would have the same inhibiting effect. When a reasonably prudent person concludes that a co-worker or employer is engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare, the public policy of this state that an employee reporting such violation be free from retaliation is involved. *Palmer v. Brown*, 242 Kan. 893, Syl. ¶¶ 1, 3, 752 P.2d 685 (1988).

However, a public employee's right to free speech is not absolute. "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." There should be a balance between the interests of a public employee, as a citizen, "in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

In *Connick v. Myers*, 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983), the United States Supreme Court expounded on the correct analysis to be applied to cases such as the one at bar. The first inquiry is whether Riddle's letter can be fairly characterized as constituting speech on a matter of public concern. If it cannot be, it is unnecessary for this court to scrutinize the reason for his discharge. See *Connick*, 461 U.S. at 146. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. The question is one of law, not fact.

If a public employee's speech can be characterized as addressing a matter of public concern, it is the court's responsibility to then balance the interest of the employee with the interest of the State in effectively and efficiently fulfilling its responsibilities to the public. One relevant inquiry is whether the action disrupted or undermined working relationships in the department. Also relevant is the manner, time, and place in which the letter was sent and whether this had a disruptive effect on the department or undermined the director's authority. If this balance tips in favor of the employee, the employee still has the burden of showing that the letter was a motivating factor for his or her suspension. *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977). If Riddle meets this burden, then the burden shifts to the City to show, by a preponderance of the evidence, that it would have reached the same decision to suspend Riddle even in the absence of the communication. For the same proposition, see *Rankin v. McPherson*, 483 U.S. _____, 97 L. Ed. 2d 315, 324-29, 107 S. Ct. 2891 (1987); *Polson v. Davis*, 635 F. Supp. 1130, 1137 (D. Kan. 1986).

The trial court found that the letter Riddle sent to the City Commission did not address a matter of public concern, but was a mere expression of his personal grievances. "[A]ppellate review of conclusions of law is unlimited." *Utility Trailers of Wichita, Inc. v. Citizens Nat'l Bank & Tr. Co.*, 11 Kan. App. 2d 421, 423, 726 P.2d 282 (1986).

A review of the letter Riddle sent to the City Commission shows that the majority of the letter addressed only his personal

grievances. However, the letter did address at least one matter of public concern: that the fire trucks had to have a battery charger kept on them so they would start, despite the fact the batteries were new, because the radio system was a constant drain on the batteries. The community has a significant interest in knowing whether its fire department can respond quickly and efficiently in an emergency.

In *Connick v. Myers*, 461 U.S. 138, an assistant district attorney in New Orleans was discharged after distributing a questionnaire soliciting the views of her fellow staff members about certain concerns she had about the office. The attorney filed suit under 42 U.S.C § 1983, contending her employment was wrongfully terminated because she had exercised her constitutionally protected right of free speech. The United States Supreme Court applied the relevant analysis to the facts in *Connick*, and found that, *with but one exception,* the questionnaire did not address matters of public concern.

The United States Supreme Court went on to say, however, that because *one of the questions* in the survey *did touch upon a matter of public concern and contributed to her discharge,* the court had to determine whether the district attorney was justified in discharging his subordinate. The court applied the balancing test enunciated in *Pickering* and found that there was no demonstration the questionnaire impeded the assistant district attorney's ability to perform her responsibilities. However, the court found that the questionnaire did disrupt the office and undermined office relationships. "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Connick,* 461 U.S. at 151-52. The Court also considered the time, place, and manner in which the questionnaire was distributed and found these factors to tip the balance in favor of the employer. The Supreme Court held the assistant district attorney's being discharged did not offend the First Amendment.

The point of *Connick* is that, even though the majority of the questionnaire in that case, like the majority of the letter in the present case, did not address matters of public concern, the questionnaire, like the letter, did address *one* matter of public concern, causing the United States Supreme Court to apply the

remainder of the *Pickering* balancing test. The trial court in the present case did not apply the balancing test, having initially determined that the threshold question, *i.e.*, whether the letter addressed a matter of public concern, should be answered in the negative. Since the letter did address at least *one* matter of public concern, *Connick* mandates that the remainder of the balancing test be applied in the present case. The letter also contains allegations of pay raises without the receiver having met personnel requirements and of favoritism in promotions and pay raises. These issues are also of public concern. Summary judgment was granted prematurely on this issue, and the case is remanded to the trial court with directions to apply the remainder of the balancing test.

## C. Right to Petition

Riddle points out that the trial court did not address his argument that his suspension violated his First Amendment right to petition the government for a redress of his grievances. Riddle makes no good faith effort to brief this issue, relying only on one short paragraph which he added as an afterthought to his brief under another heading. In view of remand of this case, the trial court should dispose of the issue, provided Riddle properly addresses the issue.

## D. Immunity from Suit

Riddle contends Skiles is not immune from suit under the Kansas Tort Claims Act and specifically relies on K.S.A. 75-6104(d) (now K.S.A. 1987 Supp. 75-6104[e]). The present action was brought as an action under 42 U.S.C. § 1983, alleging violations of federal civil rights.

In *Cook v. City of Topeka*, 232 Kan. 334, 654 P.2d 953 (1982), the plaintiff brought an action under both the Kansas Tort Claims Act and 42 U.S.C. § 1983. The sole issue on appeal was whether one of the defendants was entitled to judicial immunity under the KTCA and the Civil Rights Act of 1871 (42 U.S.C. § 1983). At the outset of its analysis on this issue, the Supreme Court noted:

"The immunity issue relative to the Kansas Tort Claims Act is obviously a matter of state law. The immunity issue relative to the Federal Civil Rights Act of 1871 (42 U.S.C. § 1983) must be determined pursuant to federal law. [Citation omitted.]" 232 Kan. at 335.

In *Lee v. Wyandotte County, Kan.*, 586 F. Supp. 236 (D. Kan.

1984), the defendant county contended that all of the plaintiffs' claims, including their civil rights claims, were governed by the Kansas Tort Claims Act. The federal district court disagreed, stating:

"We hold at the outset that plaintiffs' federal civil rights claims (which encompass their constitutional claims) are not subject to the state law limitations of the Kansas Tort Claims Act. [Citations omitted.] Plaintiffs' state law claims, however, may be subject to the Kansas Tort Claims Act." 586 F. Supp. at 239.

The trial court erred in applying the provisions of the Kansas Tort Claims Act to the present case. This does not end this court's inquiry, however.

"[I]n analyzing a case under 42 U.S.C. § 1983, one must start with the basic concept that all persons, no matter what position they hold or what activity they are engaged in, may be liable for violations of a plaintiff's rights under the Federal Constitution and laws if the violation occurs under color of state law or custom." *Cook v. City of Topeka*, 232 Kan. at 340.

Our Supreme Court also noted in *Cook* that our United States Supreme Court has recognized some exceptions to this extreme rule, including qualified or "good faith" immunity. 232 Kan. at 340. In *Gomez v. Toledo*, 446 U.S. 635, 640, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980), the United States Supreme Court held the defendant has the burden of showing it comes within the qualified immunity exception to 42 U.S.C. § 1983.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982), the United States Supreme Court found that an objective standard should be applied in making a determination of whether a defendant was entitled to qualified immunity, saying:

"We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818.

Furthermore,

"Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subse-

quent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors." 457 U.S. at 818-19.

The trial court in the present case recognized the objective standard enunciated in *Harlow*, yet went on to hold:

"Thus, the question to be resolved in this case is whether Mr. Skiles knew or should have known whether his actions violated 'clearly established' standards, or stated another way, whether he had 'good cause to act as he did.' If he did so act, he is entitled to qualified immunity."

The trial court applied a mixed subjective/objective standard and found that Skiles' actions justified his being granted "immunity," but did not expand upon which actions it thought justified the grant of immunity. The relevant inquiry is not whether Mr. Skiles knew or should have known his actions violated clearly established statutory or constitutional rights, or whether he had good cause to act the way he did, but whether a reasonable public official would have known he or she was violating someone's clearly established statutory or constitutional rights by his or her conduct. The law concerning a public employee's right to speak out on a matter of public concern without the fear of being dismissed from his or her job has been clearly established for at least two decades, and a reasonable public official would know this to be the law. On remand, the trial court should reconsider this issue in connection with its reconsideration of Riddle's First Amendment freedom of speech issue.

Affirmed in part, reversed in part, and remanded with directions to reconsider the First Amendment and qualified immunity issues.