(916 P.2d 718)
No. 73,508

ROBERT L. WIGGINS and MICHAEL WHITE, *Appellants,* v. HOUSING AUTHORITY OF KANSAS CITY, KANSAS, *Appellee.*

Opinion filed May 17, 1996.

*Michael R. McIntosh,* of Kansas City, for the appellants.

*Henry E. Couchman, Jr.,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellee.

Before RULON, P.J., LEWIS, J., and JANICE D. RUSSELL, District Judge, assigned.

LEWIS, J.: Appellants Robert L. Wiggins and Michael White were both employees of the Housing Authority of Kansas City.

Appellants were both fired by their employer. They sued the Housing Authority for wrongful termination of their employment, alleging breach of contract and retaliatory discharge.

In 1993, the trial court granted summary judgment in favor of the Housing Authority on all claims. That decision was appealed to this court, and we affirmed the trial court on all issues with the exception of a claim based on implied contract. *Wiggins v. Housing Authority of Kansas City*, 19 Kan. App. 2d 610, 873 P.2d 1377, *rev. denied* 255 Kan. 1007 (1994).

On remand to the trial court, the only issue remaining was whether an implied contract existed as to the term of employment. The court, on remand, granted summary judgment to the Housing Authority on this issue. It held that the Housing Authority had no power to enter into an implied contract with appellants for a stated tenure. Thus, appellants were employees at will and had no basis for an action for wrongful discharge.

Factually, this case is unremarkable. The only real issue is whether the Housing Authority had the power to enter into an implied contract with appellants concerning their job tenure.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. All reasonable facts and inferences which may reasonably be drawn from the evidence must be viewed in favor of the party against whom the ruling is sought. Where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 166, 872 P.2d 252 (1994).

In reaching its decision, the trial court relied on the contents of the statute which authorized the creation of a housing authority and on the ordinance of the city which created this particular housing authority.

K.S.A. 17-2340, as enacted in 1957, authorized the city to create an agency known as a "housing authority," and it reads in pertinent part as follows:

"Sec. 4. *Creation of housing authorities*. Every city in addition to other powers conferred by this or any other act, shall have power, by proper resolution of its governing body, to create as an agent of such city authority to be known as the

'housing authority' of the city. The city may delegate to such authority any or all of the powers conferred on the city by this act, and may authorize it to employ an executive director, technical experts and such other officers, agents and employees, permanent and temporary, as it may require, and to delegate to one or more of its agents or employees such powers or duties as the authority may deem proper." L. 1957, ch. 132, § 4.

The City of Kansas City created the defendant Housing Authority by the passage of resolution No. 15872. Insofar as that resolution is pertinent to the issues under consideration, it reads as follows:

"2.  The Board of Commissioners of the City of Kansas City, Kansas, pursuant to Section 4 of the Municipal Housing Law, hereby empowers and authorizes the said Housing Authority of the City of Kansas City, Kansas, to employ a secretary (who shall be executive director), technical experts and such other officers, attorneys, agents and employees, permanent and temporary, as such authority may require, to determine their qualifications, duties, and compensation, and to delegate to one or more of them such powers or duties as the authority may deem proper . . . ."

It is of utmost significance that defendant is a municipal corporation, an agency of the City of Kansas City, Kansas. Under the law of this state, a city is a creature of the legislature; it has only such powers as are conferred by law or as may necessarily be implied to give effect to powers specifically granted. *James v. City of Pittsburg*, 195 Kan. 462, 465, 407 P.2d 503 (1965). The Housing Authority, as an agency of the City, has only such power and authority as are granted to it by its enabling legislation, and its power to contract is limited to those powers specifically granted or necessarily implied. See *Wichita Public Schools Employees Union v. Smith*, 194 Kan. 2, 4, 397 P.2d 357 (1964).

The question as to whether the Housing Authority had the power to enter into implied contracts with appellants requires that we examine the law as it relates to municipal corporations.

A municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers, and all persons contracting with the corporation are deemed to know its limitations. *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 416, 479 P.2d 875 (1971). The law has made it clear that persons contracting with a municipal corporation must inquire into the

power of the municipal corporation and must at their peril know the authority of the municipal corporation. *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, Syl. ¶ 9, 834 P.2d 1344 (1992); *State, ex rel., v. City of Coffeyville*, 127 Kan. 663, 666, 274 Pac. 258 (1929). An attempt by a governmental agency to enter into a contract in violation of its authority will be considered void. *Gragg v. U.S.D. No. 287*, 6 Kan. App. 2d 152, 155, 627 P.2d 335 (1981). In the event a municipal corporation enters into a contract it has no power to make, the contract is ultra vires and unenforceable, and no further inquiry into the contract's validity is necessary. *Blevins*, 251 Kan. at 383. In addition, any reasonable doubt as to the existence of a particular power must be resolved against its existence. *Wichita Public Schools Employees Union*, 194 Kan. at 4.

The first step in our examination must begin with whether the power to enter into an implied contract is specifically granted by legislation. We have examined K.S.A. 17-2340 and resolution No. 15872, and it is apparent that there is no specific power granted to the Housing Authority to enter into employment contracts for a stated term. That being the case, the next question is whether that power can be necessarily implied. We conclude that it cannot.

Kansas is an "employment-at-will" state in which the general rule is that, absent an express or implied contract between employer and employee governing the tenure of employment, either party may terminate the employment relationship at any time with or without cause. *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 54, 551 P.2d 779 (1976); *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan. App. 2d 206, 209, 787 P.2d 1204, *rev. denied* 246 Kan. 768 (1990).

It is pointed out that in K.S.A. 17-2340, the City is empowered to authorize the Housing Authority to hire employees, both temporary and permanent. The use of the term "permanent" in the statute is not significant. The Kansas Supreme Court, in *Johnson v. National Beef Packing Co.*, considered the term permanent in the context of tenure of employment. The court rejected the concept that the term meant employment for a fixed or definite period of time. The court indicated that all the term meant was that the

job would be of some permanence as distinguished from being temporary. 220 Kan. at 55.

Article 15, section 2, of the Kansas Constitution provides as follows: "The tenure of any office not herein provided for may be declared by law; when not so declared, such office shall be held during the pleasure of the authority making appointment." See *Stoldt v. City of Toronto*, 234 Kan. 957, Syl. ¶ 2, 678 P.2d 153 (1984); *Riddle v. City of Ottawa*, 12 Kan. App. 2d 714, Syl. ¶ 4, 754 P.2d 465, *rev. denied* 243 Kan. 780 (1988).

The foregoing provision of our constitution has been construed, rather literally, to mean that in the absence of clear evidence to the contrary, a job for a governmental agency is governed by the employment-at-will doctrine.

In *Riddle v. City of Ottawa*, this court dealt with an employee of the City of Ottawa who was suspended without pay. He sued the City, claiming he had a protected property and liberty interest in his employment tenure which could not be taken without due process. We did not agree and concluded:

"Riddle does not have a constitutionally protected property right in his job as a public safety officer for the City of Ottawa. He cannot point to any state statute, city code, or contract which addresses the duration of his employment or the criteria for his suspension. Therefore, he was not entitled to procedural due process before he was suspended for ten days without pay." 12 Kan. App. 2d at 718.

The Kansas Supreme Court dealt with a similar issue in *Stoldt v. City of Toronto*, and the court in that case said:

"The Kansas Supreme Court has held only vested rights have a sufficient property interest to require due process protection. See *Leek v. Theis*, 217 Kan. 784, 539 P.2d 304 (1975). In *Leek*, this court held the tenure of any office not provided for in the constitution may be declared by statute, and when not so declared such office shall be held at the pleasure of the appointing authority. 'Kansas law clearly establishes the incumbent to a public office enjoys no *property* or *vested interest* in public office.' 217 Kan. at 811. The applicable Kansas state law in this case is K.S.A. 15-204, which provides:

'The mayor, with the consent of the council, may appoint . . . a marshal-chief of police, policemen . . . and such other officers as deemed necessary . . . . A majority of all the members of the council may remove any such officer; or, for good cause, the mayor may remove any such officer, with the consent of the council.'

This statute does not provide for any term of office. It additionally allows a mere majority of the members of the city council to remove any such officer at will. There is no requirement that the council have or give cause for the termination. The appellant in this case had no constitutionally protected property right in his position as night watchman." 234 Kan. at 964-65.

It appears to us that *Stoldt* and *Riddle* stand for the proposition that a public employee serves at the will of his or her employer unless that employer is specifically empowered to contract for employment on other terms.

We conclude that the Housing Authority had no specific power to contract for employment for a specified tenure. At the time the enabling legislation creating the Housing Authority was passed, the employment-at-will doctrine was well established in the law of Kansas. Neither the statute nor the resolution creating the Housing Authority show any intent to change the generally accepted rule in this state.

In order for the Housing Authority to have the power to enter into an implied contract for a specific duration, it would have to be demonstrated that that power is necessary in order to effectuate the power specifically granted. In this case, there is no indication whatsoever that the Housing Authority cannot function and carry out its duties under the employment-at-will doctrine. We are further bound by the proposition that any doubt concerning the existence of a nonspecified power is to be resolved against its existence.

We hold that the Housing Authority had neither the specifically expressed power nor the implied power to enter into an employment contract specifying the tenure of its employees.

It is the position of the appellants that they had an implied agreement concerning their employment tenure and that whether such an agreement existed is a question of fact for the trier of fact. That would ordinarily be an accurate observation; however, in this case the terms of the implied contract are basically irrelevant.

Our conclusion is that the Housing Authority had no power to enter into an implied contract specifying the tenure of employment. The net result of that conclusion is that even if it did enter

into such a contract with appellants, that contract was absolutely void and unenforceable, and its terms are basically irrelevant.

In *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. at 383-84, the Supreme Court said:

"Here, the County did not have the power and authority to call a binding election. Plaintiffs claim the statements made regarding holding an election created an implied contract to follow through with that promise. *If a municipal corporation enters into a contract it has no power to make, it is ultra vires and unenforceable and no further inquiry into the contract's validity is necessary.* 10 McQuillin, Municipal Corporations § 29.02 (3d ed. rev. 1990).

'Contracts which a municipal corporation is not permitted legally to enter into are not subject to ratification, and a city may not be estopped to deny the invalidity of a contract that is ultra vires in the sense that it is not within the power of the municipality to make. In other words, no ratification or estoppel can make lawful a municipal contract which is beyond the scope of the corporate powers, or which is not executed in compliance with mandatory conditions prescribed in the charter or statutes, or which is contrary to a declared policy adopted to protect the public. The notice imputed to all persons dealing with a municipal corporation of the limits of its powers, is in some cases advanced as the reason upon which these rules are based.

. . . .

'The fact that the other party to the contract has fully performed its part of the agreement, or has expended money in reliance of its validity, does not estop the city from asserting ultra vires, nor is a municipality estopped to aver its incapacity to make a contract because it received benefits under it. *That is, it cannot be made liable either on the theory of estoppel or implied contract, where it had no capacity to make the contract or where it was made in express violation of law.*' 10A McQuillin, Municipal Corporations § 29.104.30 (3d ed. rev. 1990)." (Emphasis added.)

See *Miller v. U.S.D. No. 470*, 12 Kan. App. 2d 368, 372, 744 P.2d 865 (1987), *aff'd* 242 Kan. 817, 752 P.2d 113 (1988).

We hold that any implied contract entered into with appellants was ultra vires and unenforceable and that no further inquiry into the contract's validity or terms is necessary.

Affirmed.