**Carl D. RANDOLPH, Jr., Plaintiff,**

**v.**

**BOARD OF PUBLIC UTILITIES OF KANSAS CITY, KANSAS; City of Kansas City, Kansas; Jesse Rodriguez; Earl Lohuis; Terry Drake; Sandra Whisler; Tarry Younghans; and International Brotherhood of Electrical Workers, Local No. 53, Defendants.**

**No. 96–2184–JWL.**

United States District Court,
D. Kansas.

Oct. 24, 1997.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, Laurence M. Jarvis, Laurence M. Jarvis, Chartered, Kansas City, KS, Thomas L. Thurston, Dwyer, Dykes & Thurston, Overland Park, KS, Aldo P. Caller, Shawnee Mission, KS, for Plaintiff Carl D. Randolph, Jr.

Henry E. Couchman, Jr., Daniel B. Denk, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Harold T. Walker, City of Kansas City, Kansas–Legal Dept., Kansas City, KS, for Defendants Bd. of Public Utilities of Kansas City, KS, City of Kansas City, KS, Jesse (NMI) Rodriguez, Earl Lohuis, Terry (NMI) Drake, Sandra Whisler.

Charles R. Schwartz, Blake & Uhlig, P.A., Kansas City, KS, for Defendants Tarry Younghans, Local No. 53 Intern. Broth. of Elec. Workers.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff brought federal and state race discrimination claims, a federal disability discrimination claim, federal constitutional claims, and state law contract and tort claims arising from the termination of his employment. The matter is presently before the court on two separate motions for summary judgment, one (Doc. 49) by defendants Tarry Younghans and International Brotherhood of Electrical Workers, Local No. 53 and the other (Doc. 69) by the remaining defendants. For the reasons set forth below, both summary judgment motions are granted and the case is dismissed.

### I. Facts [1]

Plaintiff Carl Randolph began working for defendant Board of Public Utilities of Kansas City, Kansas ("BPU") [2] in October 1967. He

---

1. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

2. BPU is an agency of the City of Kansas City, Kansas. Kansas City Charter Ordinance No. 106 provides that BPU may be sued only in the name of the city. § 12(j). BPU is thus not technically a proper defendant. The court nevertheless refers only to BPU throughout this memorandum and order for the purpose of clarity.

worked there until his termination on November 9, 1992. From February, 1982 until his termination, Mr. Randolph assumed a supervisory role in BPU's marketing and customer service division. He supervised twelve employees in the bill collections department. Mr. Randolph is black.

For seventeen years during his employment at BPU, plaintiff dated defendant Sandra Whisler. In January, 1987, Ms. Whisler and Mr. Randolph gave birth to a child. Ms. Whisler and Mr. Randolph lived together from 1989 until their relationship ended in July, 1990.

Ms. Whisler also worked at BPU. She began working there in November, 1973. From April 4, 1984 to February 16, 1993, Ms. Whisler was the Lead Clerk in the bill collections department. As Lead Clerk, Ms. Whisler was not a management employee, but she did play an important role in the operation of the collections department.

Defendant International Brotherhood of Electrical Workers, Local No. 53 ("IBEW Local 53") is a labor union representing certain BPU employees. From 1987 to 1993, Ms. Whisler served as a union steward for IBEW Local 53. In this capacity, Ms. Whisler had the responsibility to receive grievances from IBEW Local 53 members. Like all BPU employees, Ms. Whisler had a duty to enforce BPU's equal treatment policy.

After Mr. Randolph and Ms. Whisler broke up, Ms. Whisler began to complain about problems she encountered with Mr. Randolph in the workplace. Specifically, Ms. Whisler complained that Mr. Randolph would scream at her and appear inebriated almost daily. Ms. Whisler vowed to "get [Mr. Randolph] any way she could." She submitted her complaints to defendant Tarry Younghans, the business representative of IBEW Local 53, and to defendant Earl Lohuis, Ms. Whisler's boss at BPU. Nothing was done in response. The union apparently found Ms. Whisler's complaints less credible because of her prior relationship with Mr. Randolph.

In the spring of 1992, other complaints surfaced concerning Mr. Randolph's workplace conduct. First, Mr. Younghans received oral complaints. Later, in July, 1992, Mr. Younghans received written complaints. The complaints relate a litany of sexual comments and other sexual impropriety,[3] and further describe Mr. Randolph as being regularly under the influence of drugs or alcohol.[4] The complaints came from, *inter alia*, Marilyn Antonich, Joan Casson, Laura Hagel, Alice Keefer, Rita Soptick, and Laura Wiegel. Ms. Keefer and Ms. Hagel were summer interns. Ms. Antonich, Ms. Casson, Ms. Soptick, and Ms. Wiegel were permanent employees and members of IBEW Local 53. All of the complaints, according to plaintiff, were solicited by Ms. Whisler.

Mr. Younghans informed defendant Jesse Rodriguez, BPU's director of human resources, of the oral complaints against Mr. Randolph in February and April of 1992. Mr. Younghans provided Mr. Rodriguez with the written complaints against Mr. Randolph in July, 1992. Mr. Lohuis, who was plaintiff's immediate supervisor, also attended some of these meetings.

On July 23, 1992, Mr. Lohuis and Mr. Rodriguez issued plaintiff a conduct memorandum reading as follows:

> The employee has violated the BPU policy of Equal Treatment in the Workplace and the Rules of Conduct. Numerous instances of sexual comments and other forms of

---

**3.** Plaintiff argues that the court should disregard this evidence because it is hearsay and because it lacks foundation. *See Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995) (inadmissible hearsay evidence "is not suitable grist for the summary judgment mill."). The court disagrees. The written statements here are not hearsay because they are not offered to prove the truth of the matters they assert. The statements are offered to show the nature of the complaints BPU and IBEW Local 53 received. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555–56 (10th Cir. 1995).

**4.** Mr. Randolph believes testimony that he was under the influence is improper lay opinion. He believes such testimony violates Fed.R.Evid. 701 and 702. The court disagrees. Testimony that a person appeared inebriated is exactly the kind of evidence rule 701 was designed to admit. Such testimony is both rationally based on the perception of the witness, Fed.R.Evid. 701(a), and helpful to a clear understanding of the witness' testimony. Fed.R.Evid. 701(b). *See United States v. Stanley*, 896 F.2d 450, 451–52 (10th Cir.1990).

harassment have been reported to the management by female employees. The reports of these acts have been thoroughly investigated and validated; therefore, appropriate disciplinary action is recommended.

At the time this conduct memorandum was issued, Mr. Randolph was already on disciplinary probation in connection with another matter. Mr. Rodriguez suspended plaintiff pending a recommendation of termination. BPU offered plaintiff an option in lieu of termination, however:

In lieu of termination, the employee is herewith offered the option of entering and successfully completing a recognized treatment program as recommended through the Board of Public Utilities Employee Assistance Program which is administered by the Wyandot Mental Health Center.

The employee will also be required to complete any and all recommended after care programs which may be prescribed by the attending medical service care provider. The employee is required to sign a release of information to the employer regarding the status of his treatment in the above mentioned programs.

Upon the recommendation of the attending provider, the employee would be reinstated to his former position with no back pay, vacation or sick leave accrual during the period of suspension and would be required to complete a twenty-four (24) month probationary period. Any violation of the BPU policies or rules of conduct, during the probationary period could lead to immediate termination without recourse.

Plaintiff submitted to an evaluation at Wyandot Mental Health Center. The evaluation, conducted by Timothy J. McMulin, LSCSW, concluded:

It appears evident that Mr. Randolph is suffering from a sexual compulsion and substance abuse disorder of a fairly severe nature.... [I]t is recommended that Mr. Randolph seek treatment at an inpatient facility for substance abuse and that he receive treatment from a specialized treatment provider for his sexually compulsive issues.[5]

Mr. Rodriguez informed Mr. Randolph he would need to comply with the recommendations within ten days, and stated that "[f]ailure to comply with this requirement will leave the Management with no alternative but to proceed with the immediate termination of your employment with the BPU." Plaintiff refused to undergo substance abuse treatment and was fired. The decision to fire him was upheld by the general manager of BPU, defendant Terry Drake.

Plaintiff now claims that BPU discriminated against him because of his race.[6] Plaintiff also claims that BPU breached an implied employment contract and deprived him of his right to procedural due process under the Fourteenth Amendment. Finally, plaintiff claims that defendants Mr. Rodriguez, Mr. Lohuis, Mr. Drake, Ms. Whisler, Mr. Younghans, and IBEW Local 53 tortiously interfered with his implied employment contract.

## II. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon,* 935 F.2d 1106, 1111

---

**5.** Plaintiff attacks Mr. McMulin's opinions and conclusions by arguing they are incompetent and lack foundation. The attack has no merit. Consideration of Mr. McMulin's opinions and conclusions are appropriate at this stage because they are offered only to show the information upon which BPU relied in taking action against defendant. They are not offered to show Mr.

Randolph actually had the problems Mr. McMulin diagnosed.

**6.** Plaintiff originally claimed disability discrimination against BPU, as well. He abandoned that claim in his summary judgment papers. The court therefore grants the defendants' motion for summary judgment on that claim.

(10th Cir.1991). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th Cir.1994) (citing *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

### III. Race Discrimination

■ Plaintiff brings race discrimination claims against defendant BPU under 42 U.S.C. §§ 1981 and 1983, Title VII; and the Kansas Act Against Discrimination ("KAAD"). Plaintiff alleges his dismissal and the actions leading to it were racially motivated. BPU disagrees and asks for summary judgment.

■ A plaintiff claiming race discrimination [7] has the ultimate burden to prove he or she was fired because of racial bias. *Elmore v. Capstan, Inc.,* 58 F.3d 525, 529 (10th Cir. 1995). The plaintiff here has presented only indirect, or circumstantial, evidence of discrimination. Courts evaluate discrimination claims based on circumstantial evidence using a three-step burden-shifting format originally set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima facie case [8] of intentional discrimination. *Elmore,* 58 F.3d at 529.

7. Plaintiff's race discrimination claims all require an identical analysis. *See Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1403 n. 3 (10th Cir. 1997) (Title VII, § 1981, and KAAD); *Randle v. City of Aurora,* 69 F.3d 441, 450 (10th Cir.1995) (Title VII, § 1981, and § 1983).

8. It is possible for a plaintiff to prove unlawful discrimination by circumstantial evidence without making out a prima facie case. *See Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 559 (10th Cir.1996), *cited in Walker v. Runyon,* 979 F.Supp. 1363, 1368 (D.Kan.1997) ("The Tenth Circuit has held that a plaintiff may prove unlawful discrimination either by relying on a prima facie proof scheme or by presenting direct or circumstantial

To establish a prima facie case on a claim of discriminatory discharge, where the plaintiff was discharged for the purported violation of a work rule, the plaintiff must show that (1) he is a member of a protected class, (2) that he was discharged for violating a work rule, and (3) that similarly situated non-minority employees were treated differently.

If the plaintiff establishes a prima facie case, the defendant must articulate, and support with some evidence, a legitimate, nondiscriminatory reason for the discharge. If the defendant meets this burden, the plaintiff must then present evidence raising a genuine issue that his termination was the result of [race] or that the reason offered by [he defendant] was a mere pretext. At the summary judgment stage, if the plaintiff can show a prima facie case of discrimination and present evidence that the employer's proffered nondiscriminatory reason is a mere pretext, the case should go to the factfinder.

*Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1403 (10th Cir.1997) (citations omitted).

In an attempt to establish the third element of his prima facie case, plaintiff points to three male supervisors at BPU who he believes were similarly situated but differently treated: Sylvester Byrd, Carl Wolfe, and Khadhim Shuker.[9] All three men were accused of sexual harassment at different times by a female employee in their respective departments. BPU did not require them to go to Wyandot Mental Health Center, nor did it fire them.

evidence that race was a motivating factor in the challenged employment decisions."). As the following discussion will show, however, the plaintiff's claim falls short under either standard.

9. Plaintiff does not indicate the race of these three supervisors, nor does he even indicate that they are "non-minority" members. This failure alone may be fatal to plaintiff's claim. *See Aramburu,* 112 F.3d at 1405–06 (implying that failure to specify race of alleged similarly situated employees may be fatal). The court assumes, however, that the three supervisors are not black for the purpose of these motions.

Plaintiff's claim fails the third prima facie element because Mr. Byrd, Mr. Wolfe, and Mr. Shuker were not similarly situated to plaintiff. The complaints against Mr. Bryd, Mr. Wolfe, and Mr. Shuker were isolated complaints that were never corroborated by any other employees. The complaints against Mr. Randolph, on the other hand, were corroborated by at least six separate individuals. The complaints against Mr. Byrd, Mr. Wolfe, and Mr. Shuker apparently did not involve allegations of substance abuse at work. The complaints against Mr. Randolph, on the other hand, were laden with remarks about his inebriated appearance at work. Mr. Byrd, Mr. Wolfe, and Mr. Shuker were not on disciplinary probation when written complaints against them surfaced. Mr. Randolph was.[10] These differences are simply too great to support a claim that the three supervisors were similarly situated. *Cf. Anderson v. Boston Sch. Comm.*, 105 F.3d 762, 765–66 (1st Cir.1997) (district court did not abuse discretion in excluding evidence of disparate treatment because "a simultaneous complaint by three female students involving touching, suggestive remarks, and observations of other such conduct, together with unwanted telephone calls at home, would seem to involve a demonstrably different order of magnitude than the solitary charges against the two white employees."). Mr. Randolph's race claims fail because he has failed to make out a prima facie case of discrimination.

■ Even if Mr. Randolph succeeded in establishing his prima facie case, he cannot survive summary judgment. BPU has met its burden to articulate and support legitimate, nondiscriminatory reasons for Mr. Randolph's discharge. These reasons include the sexual harassment and substance abuse complaints, the earlier probationary status for another matter, and the refusal to comply with substance abuse treatment orders. Thus, to survive summary judgment, plaintiff must present evidence raising a genuine issue that his termination was because of his race or that defendant's proffered reasons are pretextual.

Plaintiff has not presented sufficient evidence to raise a genuine issue that his termination was because of his race. First, plaintiff submits evidence that Mr. Lohuis, after the death of Dr. Martin Luther King, Jr. some *twenty-four years* before plaintiff's termination, asked BPU employees to wear white armbands in response to plaintiff's request that they wear black armbands. Second, plaintiff submits evidence that Mr. Lohuis required plaintiff to report his absences to the company timekeeper clerk. Mr. Lohuis required the same of white supervisors. Third, plaintiff submits evidence that Mr. Drake uttered a racially charged term in front of some unidentified person on some unidentified occasion. Mr. Drake immediately apologized. No reasonable jury could find that these obscure bits of evidence prove Mr. Randolph was terminated because he is black. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994) ("[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus.").

Plaintiff also has not produced sufficient evidence that BPU's proffered reasons are pretextual. Plaintiff argues that Ms. Whisler was "out to get him" by soliciting written complaints and that Mr. Rodriguez and Mr. Lohuis waited to confront him until after he was on probation for another matter. Even if plaintiff's contentions are true, they do not raise an issue of fact that BPU's proffered reasons are a pretext for race discrimination. Mr. Randolph does not seriously allege that Ms. Whisler was motivated by racial animus. Of course, Ms. Whisler may have been moti-

---

**10.** Mr. Randolph argues that probationary status is not a valid distinction between him and the other three supervisors. He believes that BPU intentionally drummed up the sexual and substance abuse charges against him at a time when he was already on probationary status for another matter. In support of this theory, plaintiff offers evidence that Ms. Whisler was "out to get him" by soliciting written complaints and that Mr. Rodriguez and Mr. Lohuis had earlier re- ceived some oral complaints which they did not disclose until he was otherwise on probation. Mr. Randolph's argument is beside the point. Even if Ms. Whisler drummed up the written complaints at an inopportune time for plaintiff, and even if Mr. Rodriguez and Mr. Lohuis did not act on earlier oral complaints, the fact remains that Mr. Randolph committed an unrelated violation causing him to be placed on probation. The other supervisors did not.

vated by vengeance or dislike for her former lover. She may even have been motivated by a desire to get his job. If she was, so be it. She was not a management employee at BPU, and her actions do not constitute pretext on the part of BPU. *Cf. Randle v. City of Aurora,* 69 F.3d 441, 451–52 (10th Cir.1995) (to avoid summary judgment, plaintiff must present evidence that facially discriminatory reasons proffered *by the defendant* are pretextual). The alleged dilatory actions of Mr. Rodriguez and Mr. Lohuis show, at the absolute worst, poor judgment. Plaintiff has introduced no evidence to show their proffered reasons for firing him or requiring him to obtain treatment at Wyandot Mental Health Center are pretextual. No reasonable jury could find on the record before this court that their actions were based on Mr. Randolph's race. BPU's motion for summary judgment is granted as to plaintiff's race discrimination claims.

### IV. Procedural Due Process

Plaintiff claims BPU suspended and terminated him without due process of law in violation of the Fourteenth Amendment. BPU disagrees and moves for summary judgment.

■ "The Due Process Clause of the Fourteenth Amendment ... protects against governmental deprivations of life, liberty, or property without due process of law. In determining whether an individual has been deprived of his or her right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Farthing v. City of Shawnee,* 39 F.3d 1131, 1135 (10th Cir.1994) (citations omitted). The court concludes plaintiff did not have a protected property or liberty interest and that BPU is therefore entitled to summary judgment on this claim.

#### A. Property Interest

■ Property interests subject to due process clause protection "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law..... In the context of a public employee ... the touchstone is whether, under state law, the employee has a legitimate claim of entitlement in continued employment, as opposed to a unilateral expectation or an abstract need or desire for it." *Id.* (citations omitted). Under Kansas law, an employee terminable at the will of his or her employer does not possess a protected property interest in continued employment. *Id.* at 1136 (citing *Stoldt v. City of Toronto,* 234 Kan. 957, 964, 678 P.2d 153 (1984)). On the other hand, an employee terminable only for cause or fault does possess a protected property interest. *Farthing,* 39 F.3d at 1136 (citing *Gorham v. City of Kansas City,* 225 Kan. 369, 372, 590 P.2d 1051 (1979)).

Plaintiff claims he had an implied employment contract with BPU such that he could be terminated only for cause. BPU argues no such contract existed because the ordinance governing BPU forbids such a contract. The court agrees with BPU.

Three Kansas cases have severely limited the ability of public employees to assert an implied contract for continued employment. In the first case, *Stoldt,* 234 Kan. at 964–65, 678 P.2d 153, the Kansas Supreme Court held that a city employee did not have an implied contract because a governing statute allowed the city to remove him without cause. In the second case, *Riddle v. City of Ottawa,* 12 Kan.App.2d 714, 716–18, 754 P.2d 465 (1988), the Kansas Court of Appeals extended the rule in *Stoldt* and held that a city employee did not have an implied contract because a governing statute allowed his removal. The statute did not specify whether removal without cause was allowed. *Id.* In the third case, *Wiggins v. Housing Auth. of Kansas City,* 22 Kan.App.2d 367, 369–73, 916 P.2d 718 (1996), the Kansas Court of Appeals extended *Stoldt* even further, and held that an employee of a city agency did not have an implied contract because no law granted the agency specific authority to enter into such a contract.

Plaintiff and defendant submit various arguments about how *Riddle* and *Wiggins* should apply here. At least one court in this

district has fully analyzed those two cases and expressed reservations about their holdings. *Dehart v. City of Manhattan,* 942 F.Supp. 1395, 1401 (D.Kan.1996).

Neither *Riddle* nor *Wiggins,* however, control the outcome in this case. The situation here falls squarely within the rule in *Stoldt.* Mr. Randolph was an employee at will because Kansas City, Kansas Charter Ordinance No. 106, the ordinance governing the formation and operation of BPU, expressly provides that BPU employees are at-will employees. § 13(6) ("officers, agents, servants and employees [of BPU] shall serve at the pleasure of [BPU's] general manager."); *Stoldt,* 234 Kan. at 964–65, 678 P.2d 153.

Plaintiff argues that other portions of Charter Ordinance No. 106 counteract section 13(6). Specifically, he notes that the charter ordinance requires BPU to adopt and maintain a management code and a personnel code. He argues that the terms of the management code and the personnel code so adopted provide him with an implied contract.

Even assuming plaintiff is correct that the terms of the management code and the personnel code purport to give him an implied contract, those terms would have no effect. The charter ordinance provides that the management code and the personnel code "shall be consistent with this charter ordinance." §§ 12(j, k). To the extent the codes are inconsistent with § 13(6), § 13(6) governs. Accordingly, plaintiff is an employee at will as a matter of law.

 Even if Kansas law allowed plaintiff to enter into an implied employment contract with BPU, plaintiff has failed to produce sufficient evidence that such a contract existed. The formation of an implied contract in Kansas requires a proverbial "meeting of the minds." *Berry v. General Motors Corp.,* 56 F.3d 1233, 1237 (10th Cir.1995) (citing *Sidwell Oil & Gas Co. v. Loyd,* 230 Kan. 77, 79, 630 P.2d 1107 (1981)). Bargaining is an essential prerequisite. *Berry,* 56 F.3d at 1237.

Plaintiff has not presented sufficient evidence of an implied employment contract because none of the evidence he presents indicates bargaining or a "meeting of the minds." Plaintiff points to only three pieces of evidence: (1) the personnel code, (2) his own unilateral expectation of for-cause employment, and (3) a deposition statement by Mr. Rodriguez, the personnel manager, that he expected employees to rely on the progressive discipline policy in most cases. Plaintiff cannot rely on the personnel code because he did not read it before his suspension. *See Berry v. General Motors Corp.,* 838 F.Supp. 1479, 1495 (D.Kan.1993), *aff'd,* 56 F.3d 1233 (10th Cir.1995). Likewise, plaintiff cannot rely on his own unilateral expectation of continued employment. *Berry,* 56 F.3d at 1237. For the same reasons, plaintiff cannot rely on an after-the-fact deposition statement by Mr. Rodriguez. Accordingly, plaintiff has presented no competent evidence of an implied contract. He had no property interest in continued employment.

**B. Liberty Interest**

 To assert a liberty interest arising out of his or her discharge, a public employee must show that his or her dismissal resulted in the publication of information which was false and stigmatizing. *Asbill v. Housing Auth. of Choctaw Nat.,* 726 F.2d 1499 (10th Cir.1984). The employee must also show that he or she has been unable to obtain other employment as a result of the publication. *Melton v. City of Oklahoma City,* 928 F.2d 920, 927 (10th Cir.1991).

Plaintiff does not have a protected liberty interest because he has failed to demonstrate that BPU published anything. Plaintiff himself told prospective employers he was fired for sexual harassment, but BPU apparently never did. Plaintiff argues the publication element is satisfied because the prospective employers required him to reveal the reasons he was terminated. The Tenth Circuit has explicitly rejected this argument. *See Derstein v. Kansas,* 915 F.2d 1410, 1414 (10th Cir.1990) ("To impinge on a liberty interest, the stigmatizing information must be made public by the offending governmental entity.").

Because plaintiff did not have a protected property interest or a protected liberty interest, he did not have the right to any particular process. The court grants BPU's motion

for summary judgment on plaintiff's due process claims.

## V. Breach of Contract

 Plaintiff also maintains a direct state common law claim for breach of an implied contract with BPU to fire him only for cause. However, because the court has determined that no such contract existed, BPU is entitled to summary judgment on this claim as well.

## VI. Tortious Interference with Contract

 Plaintiff claims defendants Mr. Rodriguez, Mr. Lohuis, Mr. Drake, Ms. Whisler, Mr. Younghans, and IBEW Local 53 tortiously interfered with his implied employment contract by inducing his dismissal. Again, because the court has determined that plaintiff did not have an implied employment contract, he cannot claim these defendants tortiously interfered with it. *See Dickens v. Snodgrass, Dunlap, & Co.,* 255 Kan. 164, 168–69, 872 P.2d 252 (1994) ("The elements essential to recovery for tortious interference with contract are: (1) the contract....").

 Plaintiff also claims defendants tortiously interfered with his employment at will contract. Defendants contend that plaintiff has waived this theory by not raising it in the pretrial order. The court agrees. *See Hullman v. Board of Trustees of Pratt Comm. College,* 950 F.2d 665, 667 (10th Cir.1991) (pretrial order "control[s] the subsequent course of the action unless modified by a subsequent order.").

 Even if plaintiff had not waived this theory, however, he could not survive summary judgment because he has failed to establish all the elements of a tortious interference with contract claim. Plaintiff has met the first element, the existence of a contract, because Kansas law leaves no doubt that the employment at will relationship is a contractual one. *Id.* at 175, 872 P.2d 252. Plaintiff's claim fails, however, because there was no breach of his employment at will contract. *Id.* at 168–69, 872 P.2d 252 ("The elements

essential to recovery for tortious interference with contract are: ... (3) the intentional procurement of [the contract's] breach....."). An employment at will contract is not breached by termination. *Id.* at 176–77, 872 P.2d 252. By its nature it can be terminated at any time and for any reason. *Id.* Liability for terminating it arises only if one of the two public policy exceptions applies. *Id.* at 176–77, 872 P.2d 252 (recognizing exceptions for retaliation against whistle blowers and retaliation against filers of workers compensation claims). Other courts in this district have summarily rejected tortious interference with contract claims based on employment at will contracts. *Mart v. Dr. Pepper Co.,* 923 F.Supp. 1380, 1390 (D.Kan.1996) (refusing even to recognize a contract); *Lorimor v. Boeing Wichita Employees' Credit Union,* No. 92–1268–PFK, 1994 WL 240774 at 7 (D.Kan. May 25, 1994) (refusing even to recognize a contract); *Johnson v. Wefald,* 766 F.Supp. 977, 984 (D.Kan.1991) (refusing even to recognize a contract), *reconsideration granted in part on other grounds,* 779 F.Supp. 154 (D.Kan.1991).

 Plaintiff points out that this court has held a contract need not necessarily be enforceable for a tortious interference with contract claim to lie. *See DP–Tek, Inc. v. AT&T Global Info. Solutions Co.,* 891 F.Supp. 1510, 1518–19 n. 12 (D.Kan.1995) (citing Restatement (Second) of Torts § 766, cmt. f). Plaintiff is correct. The holding in *DP–Tek,* however, is a far cry from a holding that a contract need not be breached for a tortious interference with contract claim to lie. In other words, a breached contract for which the breaching party has a valid defense to liability may be the subject of a tortious interference with contract claim. *Id.* A contract that has not been breached, however, cannot be the subject of such a claim.[11] *Dickens,* 255 Kan. at 168–69, 872 P.2d 252. Plaintiff is, in effect, arguing for an exception to the employment at will doctrine beyond the two public policy exceptions created by the Kansas courts. It is not the place of this court to create such an exception. The court

11. This is not to say that no claim lies for tortious interference with prospective business advantage. Plaintiff has not advanced such a theory here, and the court expresses no opinion on the matter.

grants the defendants' motions on plaintiff's tortious interference with contract claims.[12]

**IT IS THEREFORE ORDERED BY THE COURT THAT** the motion for summary judgment by defendant Tarry Younghans and defendant International Brotherhood of Electrical Workers, Local No. 53 (Doc. 49) is granted.

**IT IS FURTHER ORDERED THAT** the motion for summary judgment by defendant Board of Public Utilities of Kansas City, Kansas, defendant City of Kansas City, Kansas, defendant Jesse Rodriguez, defendant Earl Lohuis, defendant Terry Drake, and defendant Sandra Whisler (Doc. 69) is granted.

**IT IS SO ORDERED.**

12. In light of the court's disposition of defendants' motions, it finds no purpose in evaluating the myriad other defenses raised therein.