Henry LAY, Plaintiff,

v.

**HORIZON/CMS HEALTHCARE CORPORATION d/b/a Indian Meadows Nursing Center, Inc., Defendant.**

**Civ. A. No. 98–2295–KHV.**

United States District Court,
D. Kansas.

Aug. 19, 1999.

Bruce C. Jackson, Jr., Jason M. Pottenger, Yonke, Arnold, Newbold & Regan, P.C., Kansas City, MO, for Plaintiff.

John J. Yates, Robert J. Hoffman, Bryan Cave LLP, Sharon A. Willis, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Henry Lay filed suit against his former employer, Horizon/CMS Healthcare Corporation, alleging that it discharged him in retaliation for his intent to file a workers' compensation claim, that it fraudulently induced him to sign a resignation letter, and it discharged him in violation of Kansas public policy. The matter is before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 46) filed June 1, 1999. After carefully considering the parties' briefs, the Court sustains the motion.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87,

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### *Factual Background*

The following facts are uncontroverted or deemed admitted for purposes of the instant motion.

Horizon employed plaintiff as a kitchen aide at Indian Meadows Nursing Center, Inc. ("Indian Meadows"), a nursing home facility. As a kitchen aide, plaintiff served water to residents and placed food items on separate carts, with identification cards, to ensure that defendant's clients, received meals corresponding to their dietary needs.

On June 16, 1997, plaintiff fell and injured his knee while working in the kitchen at the Indian Meadows facility. Sandra Dennis, Assistant Supervisor at the facility, responded and viewed plaintiff's injury. In accordance with defendant's drug testing policy, Dennis informed plaintiff that he had to take a drug test because he had been involved in an accident which re-quired medical treatment. Horizon had a mandatory pre-employment and post-accident drug testing policy. Plaintiff knew of this policy and knew that a positive drug test would result in his discharge.

After plaintiff urinated into a test cup, Linda Ahlhelm, Director of Nursing, arrived to act as a witness to the drug test in accordance with defendant's written policies and procedures. Dennis and Ahlhelm evaluated the test. Lori Salisbury, a Human Resources Director, also was present to evaluate the drug screening. After viewing the test on the urine sample, Ahlhelm and Salisbury concluded that the test cup indicated a positive result for THC, the active ingredient of marijuana. Dennis testified that Ahlhelm was unsure of the test result until she consulted Salisbury.

Ahlhelm and Salisbury returned to the kitchen area. Ahlhelm told plaintiff that they had bad news for him. Plaintiff responded "Yeah, I know." Plaintiff thought he was responding to the condition of his knee. Ahlhelm and Salisbury understood plaintiff, however, to be affirming his use of marijuana. After Ahlhelm informed plaintiff that he had failed the drug test, he did not request a second opinion. Ahlhelm immediately discharged plaintiff and explained that his termination was due to his positive drug test for marijuana. Plaintiff asked Dennis: "What am I supposed to do with my leg?" Dennis responded "Well, you're no longer our responsibility because you're no longer employed here."

On June 27, 1997, plaintiff returned to Indian Meadows to pick up his last paycheck. Rob Fisher, an employee at Indian Meadows, told plaintiff to speak to Mark O'Hara, the Administrator of the facility. When he entered O'Hara's office, plaintiff knew that he did not have a job with Indian Meadows and that his employment had ended eleven days earlier, on June 16, 1997. O'Hara told plaintiff that he would not be eligible for workers' compensation benefits unless he resigned his position,

and asked plaintiff to draft a resignation letter back-dated to June 16, 1997, the date of his injury. O'Hara stated: "We need you to sign this [back-dated resignation] so we can pay the Worker's Comp; otherwise we'll have to take you to court on the drug test." Plaintiff composed and signed a resignation letter dated June 16, 1997. Defendant did not contest plaintiff's workers' compensation claim. Defendant's insurance carrier paid plaintiff $160.00 every other week for nine or ten weeks, and then a $3,500.00 payment, for his injury and related expenses.

## *Analysis*

### I. Retaliatory Discharge Claim

■ Plaintiff claims that defendant discharged him because of his on-the-job injury. Kansas applies the common law doctrine of employment at will. *See Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 508, 738 P.2d 841, 846 (1987). Unless the parties have an express or implied contract, an employer can end the employment relationship "for good cause, for no cause, or even for a wrong cause." *Id.; see Wiggins v. Housing Auth.*, 22 Kan. App.2d 367, 370, 916 P.2d 718, 721 (1996). The only exceptions to the rule of at-will employment are based on public policy. *See Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 176, 872 P.2d 252, 261 (1994). One exception is that an employer may not discharge an employee for filing a workers' compensation claim. *See Ortega v. IBP, Inc.*, 255 Kan. 513, 516–17, 874 P.2d 1188, 1191 (1994).

■ When analyzing state-law retaliatory discharge claims, federal courts in Kansas apply the burden-shifting approach used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Robinson v. Wilson Concrete Co.*, 913 F.Supp. 1476, 1483 n. 2 (D.Kan.1996); *Ramirez v. IBP, Inc.*, 913 F.Supp. 1421, 1429 (D.Kan.1995). Plaintiff first bears the burden of proving a prima facie case of retaliatory discharge by showing (1) that he filed a claim for workers' compensation benefits or sustained a work-related injury for which he could assert a future claim for such benefits; (2) that the employer had knowledge of the plaintiff's compensation claim or the fact that he had sustained a work-related injury for which he could file a future claim for benefits; (3) that the employer terminated his employment; and (4) that a causal connection existed between the protected activity or injury, and the termination. *Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1481 (D.Kan.1995). If plaintiff meets this burden, he has raised a rebuttable presumption of retaliatory intent. *See id.*

Defendant argues that plaintiff fails to meet the fourth requirement of a prima facie case because he has not shown a causal connection between his injury and his termination. The Court need not reach this issue because even if plaintiff can establish a prima facie case, he has not offered sufficient evidence for a reasonable jury to find that defendant's proffered reason for his termination, *i.e.* a positive drug test, is pretext for retaliation under the workers' compensation law. As evidence of pretext, plaintiff relies on (1) procedural irregularities in the handling of his drug test, (2) O'Hara's post-termination statement that "there were problems with the drug test," (3) O'Hara's request that plaintiff sign and back-date a resignation letter, and (4) the absence of a statement on his discharge form that he admitted using drugs.

■ With respect to procedural irregularities, plaintiff alleges that defendant violated K.S.A. § 65–1,108 and its own policies by failing to retain his urine sample and send it to a certified laboratory for testing. Although "disturbing procedural irregularities" may support an inference of discrimination, plaintiff has not shown any such irregularities with respect to the handling of his urine sample. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532 (10th Cir.1994); *Mohammed v. Callaway*, 698 F.2d 395, 399 (10th Cir. 1983). First, no negative inference can be drawn from defendant's handling of

the sample because Ahlhelm and Salisbury understood plaintiff's statement ("Yeah, I know") as an affirmation of his marijuana use and positive test results. The lack of further testing is understandable when an employee affirms his drug usage and does not request an additional test. Plaintiff also has not presented evidence that defendant had a policy of sending samples for confirmation testing. Indeed, several witnesses testified that such a policy did not exist at the time of plaintiff's accident. *See* Salisbury Depo. at 8–10; O'Hara Depo. at 14, 24; Ahlhelm Depo. at 20. Further, plaintiff has not shown that Ahlhelm or Salisbury generally followed or even knew of the procedures of K.S.A. § 65–1,108. If the employees who conducted the test did not know of the procedures, their failure to follow those procedures cannot support an inference of retaliation.

Likewise, O'Hara's statement that "there were problems with the drug test" does not create an inference that defendant retaliated against plaintiff. From the record evidence, O'Hara's statement may give rise to an inference that the drug test was inaccurate or that defendant should have sent the sample to a laboratory for a follow up test, but not an inference that defendant used the drug test as a pretext to terminate plaintiff in retaliation for his injury. According to Salisbury, O'Hara said that a problem with the drug test was that it should have been sent in for confirmation.[1] *See* Salisbury Depo. at 28. In an apparent effort to correct this problem, defendant changed its drug testing policy to require confirmation testing of positive results. No record evidence suggests any other "problems," such as falsification or tampering, with plaintiff's drug test. Thus the Court finds that no inference of pretext can be drawn from O'Hara's comment.

Next, plaintiff contends that the jury could infer pretext from O'Hara's request that he sign and back-date a resignation letter. Plaintiff further argues that a jury could conclude that defendant intended to "undo" and cover up plaintiff's illegal termination by inducing him to resign. O'Hara testified that as a good will gesture, he had asked other employees to back-date resignation letters to the time of termination. *See* O'Hara Depo. at 31–32. Plaintiff has not offered evidence that O'Hara asked him to submit the resignation letter for any purpose other than to allow plaintiff to receive workers' compensation benefits without objection by defendant and avoid a tarnish on plaintiff's work record. O'Hara's request by itself is insufficient to establish pretext.

Finally, plaintiff argues that discrimination may be inferred because Ahlhelm and Salisbury did not record plaintiff's alleged admission of drug use on his employee disciplinary report. Plaintiff claims that if Ahlhelm and Salisbury thought that he had admitted drug usage, they should have noted it in the "Employee Comments" section of the report. Plaintiff ignores the fact that this section includes a parenthetical which reads "May be submitted to the Supervisor presenting the [Employee Disciplinary Report] within 5 days of presentation of [the Employee Disciplinary Report]." This parenthetical implies that this section of the report is soliciting *employee* comment—not supervisory comment. Plaintiff has not offered evidence that any supervisor typically includes employee admissions in this section of the form. Moreover, Ahlhelm and Salisbury adequately explained the reason for plaintiff's discharge in the other sections of the report. The report indicates that plaintiff tested positive for THC, that an accident occurred while he was under the influence of THC, and that defendant immediately discharged him. In sum, no inference of retaliation can be drawn from the fact that plaintiff's disciplinary report omits his alleged admission of drug use.

---

1. Although Salisbury so testified, Salisbury, O'Hara and Ahlhelm all testified that defendant did not have a policy of sending positive samples for confirmation testing at the time of plaintiff's accident.

Plaintiff's evidence of a casual connection between his termination and his injury is also insufficient to show that defendant's offered reason for termination is pretextual. First, plaintiff states that he believes he was terminated because of his injury. Plaintiff's statement is contrary to his testimony that he did not know why he was terminated and/or that he was terminated because of a positive drug test. *See* Plaintiff's Depo. at 42–44. More importantly, plaintiff's subjective belief regarding the reason for his termination is insufficient to establish that defendant's offered reason is pretextual. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1408 n. 7 (10th Cir.1997).

 Plaintiff also claims that the timing of his termination in relation to his injury supports an inference of discrimination. It is well established that timing alone is insufficient. *See Robinson,* 913 F.Supp. at 1484. In this case, an inference of retaliation is particularly inappropriate because plaintiff's injury triggered the drug test pursuant to defendant's neutral written policies. Defendant interpreted the test as positive and immediately terminated plaintiff according to those policies. Plaintiff himself understood that a positive test result would lead to termination. If defendant had terminated plaintiff based on some subjective factor shortly after his injury, or terminated plaintiff before the drug test, the timing factor might support an inference of discrimination. Such facts, however, are not present here. Accordingly, the timing of plaintiff's termination is insufficient to establish pretext.

 Finally, plaintiff alleges that after he asked Dennis about treatment for his leg, Dennis responded "Well, you're no longer our responsibility because you're no longer employed here." Plaintiff claims that this statement shows that the company terminated him because he intended to file for workers' compensation benefits. Dennis' statement is not probative, however, because Ahlhelm—not Dennis—terminated plaintiff. Moreover, the comment by Dennis suggests only that she believed that plaintiff was ineligible for benefits

because of his positive drug test, termination and/or lack of employment with the company. Her comment does not support an inference that defendant terminated plaintiff because of his intent to seek benefits. Dennis' comment is a "stray remark" which is not probative of the ultimate issue of discrimination. *See Figures v. Board of Pub. Util.,* 967 F.2d 357, 360–61 (10th Cir. 1992).

In sum, plaintiff has failed to offer sufficient evidence that defendant's proffered reason for termination is a pretext for retaliation. Accordingly, the Court sustains defendant's motion for summary judgment on plaintiff's retaliatory discharge claim.

## II. Fraud Claim

 Plaintiff alleges that O'Hara fraudulently told plaintiff that he was not eligible for workers' compensation benefits because he had tested positive for marijuana. To prevail on a claim of fraudulent misrepresentation, plaintiff must prove by clear and convincing evidence that (1) defendant made an untrue statement of fact, (2) defendant knew the statement was untrue or recklessly made it with disregard for the truth, (3) defendant made the statement with the intent to induce plaintiff to act on the statement, (4) plaintiff justifiably relied on the statement to his or her detriment, (5) plaintiff sustained injury as a result of his or her reliance. *See Tetuan v. A.H. Robins Co.,* 241 Kan. 441, 465–67, 738 P.2d 1210, 1228–30 (1987); *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545, 551–52 (1980); *Hutchinson Travel Agency, Inc. v. McGregor,* 10 Kan. App.2d 461, 463–64, 701 P.2d 977, 980 (1985).

Defendant argues that plaintiff has failed to meet any of the above elements with respect to his claim. The Court need not analyze each element because plaintiff clearly has failed to meet the second, fourth and fifth elements. To meet the second element, plaintiff argues that the drug test was not even admissible in a

workers' compensation proceeding, and that O'Hara therefore had to know that his statement was false or made with reckless disregard for its falsity. *See* K.S.A. § 44–501(d)(2) (results of chemical test inadmissible unless test performed in certified laboratory). Plaintiff offers no evidence, however, of O'Hara's actual intent. The fact that the drug test results were inadmissible does not establish by clear and convincing evidence that O'Hara knew that plaintiff was eligible for benefits. O'Hara could have reasonably concluded that other evidence, such as plaintiff's alleged admission of drug use, was sufficient to show that plaintiff's injury was caused in part by his drug use. The dearth of evidence regarding O'Hara's knowledge and/or recklessness with respect to plaintiff's eligibility for workers' compensation benefits is fatal to plaintiff's fraud claim.

Plaintiff also has failed to establish the fourth and fifth elements of his fraud claim. To meet these elements, plaintiff must show that he sustained injury as a result of his reliance on the truthfulness of the representation. *See Nordstrom,* 227 Kan. 59 ¶ 6, 605 P.2d 545 (plaintiff must justifiably rely on statement and act to his injury); *Hutchinson Travel,* 10 Kan. App.2d at 464, 701 P.2d at 980 (plaintiff must show that damage result of reliance). Here, plaintiff alleges that he signed and back-dated a resignation letter in reliance on O'Hara's statement. Plaintiff concedes that he had lost his job with defendant before he signed the resignation letter. Plaintiff has not offered any evidence, or even argued, how he suffered damage by signing the resignation letter. Indeed, plaintiff apparently benefitted by signing the letter. First, defendant did not contest his workers' compensation claim. Second, plaintiff's personnel record reflected that he resigned rather than being terminated for a positive drug test. Plaintiff apparently claims that he lost trust in people as a result of defendant's misrepresentation. Any such damage, however, occurred because of the falsity of O'Hara's representation, not because plaintiff signed the resignation letter. Plaintiff cannot re-

cover for his alleged emotional damages because they are not the result of the resignation letter. *See Nordstrom,* 227 Kan. 59 ¶ 6, 605 P.2d 545; *Hutchinson Travel,* 10 Kan.App.2d at 464, 701 P.2d at 980.

For these reasons, the Court sustains defendant's motion for summary judgment on plaintiff's fraud claim.

### III. Wrongful Discharge Claim Based On Alleged Invalidity Of Drug Test

Plaintiff claims that his discharge violated Kansas public policy because the drug test did not conform to the requirements of K.S.A. § 65–1,108. In particular, plaintiff claims that defendant failed to save his urine sample or send it to a certified laboratory. Defendant argues that plaintiff cannot invoke K.S.A. § 65–1,108 because it does not apply to employers who use drug test kits and it does not provide a private cause of action. The Court need not reach the former question because the latter question is dispositive.

As noted above, Kansas employment law is grounded in the doctrine of employment at will. Absent an express or implied contract of duration or limiting reasons for discharge between the employer and employee, employment is terminable at the will of either party. *See Ramirez,* 913 F.Supp. at 1428. An employer may discharge an employee at will for good cause, for no cause, or even for bad cause, without incurring legal liability. *See id.; Morriss,* 241 Kan. at 508, 738 P.2d at 846.

In order to prevail on his retaliatory discharge claims, and overcome the employment at will doctrine, plaintiff must demonstrate either (1) that Kansas courts have recognized his wrongful discharge claim as an exception to the employment at will doctrine, or (2) that Kansas public policy protects the conduct on which his wrongful discharge claim is based and no alternative state or federal remedy exists. *See Butler v. City of Prairie Village,* 961 F.Supp. 1470, 1474 (D.Kan.1997), *rev'd in*

*part on other grounds,* 172 F.3d 736 (10th Cir.1999). Kansas courts have construed narrowly the public policy exceptions to this doctrine. *See Pierce v. Engle,* 726 F.Supp. 1231, 1235 (D.Kan.1989). The two exceptions that Kansas courts have recognized are (1) where an employer discharges an employee for exercising rights under the workers' compensation laws; and (2) where an employer discharges an employee for a good faith report or threat to report a serious infraction of rules, regulations, or law pertaining to the public health, safety and the general welfare by a coworker or employer, *i.e.* "whistleblowing." *See Ali v. Doublas Cable Comm'ns,* 929 F.Supp. 1362, 1387 (D.Kan.1996). Plaintiff invokes neither of these exceptions. Rather, he seeks to exonerate a public policy that allegedly protects an employee's right to a fair and comprehensive drug test when one is conducted by an employer.

 Kansas courts have not recognized such a public policy, and the Court finds no authority for the proposition that one is recognized, or should be recognized, as an exception to the doctrine of employment at will under Kansas law. Absent a more definitive statement from Kansas courts or the Kansas legislature, the Court is not inclined to create a new public policy exception to the doctrine of employment at will. *See Butler,* 961 F.Supp. at 1474; *Collins v. Old Republic Title Co. of Kansas City, Inc.,* Civ. A. No. 96–2246–GTV, 1996 WL 439295, at *3 (D.Kan. July 10, 1996). Plaintiff claims that an exception is appropriate where an employee is discharged because of an inaccurate drug test. Plaintiff's theory is similar to a theory that employers should be liable for exercising poor business judgment. An employer is not liable, however, simply because it relies on inaccurate, inconclusive or bad information. *See Morriss,* 241 Kan. at 508, 738 P.2d at 846. A judicially created exception to the

doctrine of employment at will, for employees who are discharged because of inaccurate drug tests, could logically lead to exceptions for employees who are discharged because of other inaccurate information. The Court, however, does not act as a super-personnel department which determines the accuracy of information relied on by an employer.[2]

 Plaintiff claims that the Court should infer that a private right of action is available under K.S.A. § 65–1,108. Whether a private right of action exists under a statute is a question of law. *See Kerns v. G.A.C., Inc.,* 255 Kan. 264, 281, 875 P.2d 949, 961–62 (1994). Kansas courts apply a two part test. First, plaintiff must show that the statute was designed to protect a specific group of people rather than the general public. *See OMI Holdings, Inc. v. Howell,* 260 Kan. 305, 340, 918 P.2d 1274, 1296 (1996). Second, plaintiff must show that the legislative intent supports a private right of action under the statute. *See id.* "In the absence of express provisions, the legislative intent to grant or withhold such a right is determined primarily from the language of the statute. The nature of the evil sought to be remedied and the purpose the statute was intended to accomplish may also be taken into consideration." *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.,* 249 Kan. 348, 371, 819 P.2d 587, 603 (1991) (citing *Greenlee v. Board of County Commissioners of Clay County,* 241 Kan. 802, 804, 740 P.2d 606 (1987)). In addition, courts generally will not infer a private cause of action where a statute provides criminal penalties but does not mention civil liability. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (every criminal statute passed for the benefit of some particular class of persons does not carry

---

**2.** To the extent that plaintiff's allegations could be construed as a negligent discharge claim, the Court finds that Kansas, like most jurisdictions which have addressed the issue, would not recognize such an exception to the employment at will doctrine. *See Vice v. Conoco, Inc.,* 150 F.3d 1286, 1291–92 (10th Cir. 1998).

with it a concomitant civil damages cause of action); *Cort v. Ash,* 422 U.S. 66, 80, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (private right of action may not be inferred from a criminal prohibition).

The Court must begin with the words of the statute. *See United States v. James,* 478 U.S. 597, 604, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986). The Court assumes that "the legislative purpose is expressed by the ordinary meaning of the words used." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). Accordingly, "the language of the statute itself is controlling when it is sufficiently clear in context," *Blue Cross Ass'n v. Harris,* 664 F.2d 806, 809 (10th Cir.1981) (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)), and must prevail absent a conflict with the statute's legislative history. *Aaron v. Securities & Exch. Comm'n,* 446 U.S. 680, 699–700, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

 Plaintiff has not satisfied the second part of the test outlined above. The statute simply does not evidence a legislative intent to provide remedies for victims of faulty or unregulated test procedures. Section 65–1, 108 provides a criminal penalty for violation of the statute, but no civil remedy is included. The legislature apparently determined that criminal penalties adequately advance the purposes of the statute, *i.e.* to promote accurate test results and discourage unregulated testing for controlled substances. *See* K.S.A. § 65–1,108; *OMI Holdings,* 260 Kan. at 331, 918 P.2d at 1291. Nothing in the statute suggests that the legislature intended to provide compensation to employees who are discharged because of faulty or unregulated test procedures. *See generally* Kan. Atty. Gen. Op. No. 97–96, 1997 WL 808537 (Dec. 3, 1996) (statute not applicable to employers using onsite drug testing kits). Accordingly, the Court declines to read into the statute a private right of action. *See Central Bank of Denver,* 511 U.S. at 191, 114 S.Ct. 1439; *Cort,* 422 U.S. at 80, 95 S.Ct. 2080.

Plaintiff argues that *Schlobohm v. United Parcel Serv., Inc.,* 248 Kan. 122, 804 P.2d 978 (1991) is controlling. In *Schlobohm,* plaintiff sustained injuries from a fall in the entranceway of defendant's buildings. Plaintiff argued that defendant was negligent because it violated a building code regarding the elevation differential between the outside landing of the doorway and the threshold. The Kansas Supreme Court held that defendant's violation of the building code was evidence of negligence per se. *See id.* at 127, 804 P.2d at 982. The court reasoned that the building code was designed to protect a particular class of persons, *i.e.* those who enter and exit doorways, and the code specifically provided that civil liability is not precluded even though criminal liability may attach for a violation. *See id.*

The *Schlobohm* decision is distinguishable from the instant action. First, plaintiff has brought a claim for wrongful discharge in violation of Kansas public policy, not a claim for negligence per se. As noted before, plaintiff has not shown a clear Kansas public policy that employees who are discharged because of an inaccurate drug test should be exempted from the doctrine of employment at will. Second, unlike the ordinance in *Schlobohm,* the statute at issue in this case does not mention the possibility of civil liability in the text of the statute. No other evidence suggests that the Kansas legislature intended to allow employees to bring private causes of action against their employers in these circumstances.

For these reasons, the Court sustains defendant's motion for summary judgment on plaintiff's wrongful discharge claim based on the alleged invalidity of the drug test.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 46) filed June 1, 1999, be and hereby is **SUSTAINED.**