**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DEBRA K. NEY,

       Plaintiff-Appellant,

v.

CITY OF HOISINGTON, KANSAS;
HOISINGTON POLICE
DEPARTMENT; KENTON DOZE;
ALLEN DINKEL,

       Defendants-Appellees.

No. 07-3086
(D.C. No. 05-CV-4059-JAR)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

Ms. Debra Ney appeals from a district court order that granted the

Defendants-Appellees' motion for summary judgment in her employment-

termination case. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

Ms. Ney worked as a clerk for the City of Hoisington's Police Department and Municipal Court. In 1998, she reported to authorities that the chief of police had child pornography on his computer. The City eventually terminated the chief and made Mr. Kenton Doze acting chief.

Ms. Ney claims that Mr. Doze retaliated against her for reporting the police chief by reprimanding her and making her working conditions "extremely hostile." Aplt. App. at 126. In April 1999, Ms. Ney's doctors "took [her] off of work for seven months" because she "had an emotional breakdown." *Id.* The City wrote Ms. Ney a letter, suggesting that she complete the paperwork necessary to qualify the leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601-2654. She forwarded the letter to her attorney, who then told the City that the FMLA did not apply to her leave:

> For your information, the [FMLA] does not apply in this case. The FMLA would require the City of Hoisington to allow Ms. Ney to take up to 12 weeks of unpaid leave if she didn't have any earned sick leave and needed or wanted time off for one of the reasons allowed by the federal law. The FMLA has absolutely nothing to do with Ms. Ney's situation and the employee has to request the time off through the Act, which Ms. Ney did not do and didn't need to do. Ms. Ney is taking sick leave through her accumulated sick leave she earned as a job benefit from 16 years of service to the City of Hoisington. Ms. Ney chose to use her paid sick leave and accrued vacation and not take time off pursuant to the FMLA; therefore, the Act does not apply.

Aplt. App. at 199 (brackets and ellipsis omitted).[1]

When Ms. Ney returned to work at the end of 1999, the keys to her building had been changed, her file cabinet was gone, she was assigned "to work in a closet," and she was given an extraordinary amount of work. *Id.* at 127. Further, Mr. Doze and the new city manager, Mr. Allen Dinkel, regularly "yelled to [her], accused [her] of things and berated [her] for hours." *Id.* Mr. Doze also changed her work schedule, requiring her to work Fridays and certain evenings.

In March 2003, Ms. Ney told Mr. Doze and Mr. Dinkel that her doctor had advised her not to attend meetings with them unless her husband or doctor were present. The advice from Ms. Ney's doctor was intended for her "legal protection" and "emotional support." *Id.* at 51-52. Mr. Dinkel agreed, but on the condition that the support person not speak during the meeting. During a meeting in March, Ms. Ney's husband was present. He refused, however, to abide by Mr. Dinkel's condition, interjecting himself into the conversation.

On May 8, 2003, Ms. Ney refused to attend a meeting with Mr. Dinkel because she could not contact her husband or doctor. Mr. Dinkel terminated her

---

[1] Contrary to the views expressed in the letter, FMLA leave is not dependent upon the absence of earned leave. Specifically, "when an employee's leave qualifies both under the FMLA and under the employer's paid leave policy[,] the employer may either permit the employee to use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently." *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001); *accord Slentz v. City of Republic*, 448 F.3d 1008, 1010 (8th Cir. 2006).

on May 12, 2003, when she again refused to attend a meeting.  The city council upheld the termination.

Ms. Ney sued the City, the Police Department, Mr. Doze, and Mr. Dinkel (collectively, the City).  She alleged that her termination violated the FMLA's anti-retaliatory provision, the federal constitution's equal-protection and due-process clauses, and state whistleblowing law.  She also alleged that she was defamed by a city employee's statement that she was "crazy."  *Id.* at 33.  The district court granted the defendants summary judgment on the federal claims and declined to exercise supplemental jurisdiction on the state claims.  Ms. Ney appeals.[2]

## DISCUSSION

### I.  Standards of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court."  *Darr v. Town of Telluride*, 495 F.3d 1243, 1250 (10th Cir. 2007).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a

---

[2]    Ms. Ney does not challenge the district court's declination of supplemental jurisdiction.

genuine issue of material fact exists, we draw all reasonable inferences in favor of the party opposing summary judgment. *Curtis v. Okla. City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1214 (10th Cir. 1998).[3]

## II. FMLA Retaliation

Ms. Ney claims that she was fired in retaliation for taking seven months of FMLA leave. The FMLA grants "an eligible employee . . . a total of 12 workweeks of leave during any 12-month period" if the employee is unable to perform the functions of her position due to a serious health condition. 29 U.S.C. § 2612(a)(1)(D). The FMLA also prohibits employers from retaliating against employees who exercise their rights under the statute. *See* 29 U.S.C. § 2615(a)(2).

FMLA-retaliation claims are subject to the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1170 (10th Cir. 2006).

> Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so,

---

[3]     In her reply brief, Ms. Ney appears to challenge the district court's decision to disregard her summary-judgment affidavit statements that were not based on personal knowledge or supported by other portions of the summary-judgment record. "But we do not consider arguments raised for the first time on appeal in a reply brief." *Hutton Contracting Co. v. City of Coffeyville*, 487 F.3d 772, 788 (10th Cir. 2007). In any event, we note that the district court properly concluded that summary-judgment affidavits must be based on personal knowledge and that statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006). We proceed on this well-settled premise.

> then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.

*Id.* (citations omitted).

## A. Prima Facie Case

To state a prima facie case of retaliation, Ms. Ney must show that (1) she engaged in protected activity; (2) a reasonable employee would have found the City's action materially adverse; and (3) there is a causal connection between her protected activity and the City's adverse action. *Id.* at 1171. The district court concluded that Ms. Ney's prima facie case failed on the first element because she, through her lawyer, rejected taking the time off as FMLA leave. On appeal, Ms. Ney argues that the rejection is irrelevant, because the mere fact that she took sick leave meant that she engaged in a protected activity. We disagree. The mere use of sick leave does not implicate the FMLA; rather, the FMLA comes into play when there is a serious health condition that prevents the employee from performing her work. *See* 29 U.S.C. § 2612(a)(1)(D). Consequently, the employee must provide "notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave." 29 C.F.R. § 825.302(c); *see also id.* § 825.303(b). This notice triggers the employer's right to require a doctor's certification confirming that the employee truly has a serious health condition. *See* 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(a). Leave taken by an employee

-6-

who fails to provide requested certification "is not FMLA leave." 29 C.F.R. § 825.312(b).

Here, Ms. Ney's attorney told the City in no uncertain terms that Ms. Ney did not want FMLA coverage for her leave. She was thus able to take leave without being subjected to the City's right to insist on a doctor certifying the seriousness of her health condition. We are unaware of any authority that permits an employee to bypass the FMLA's notice and certification provisions. Accordingly, we conclude that Ms. Ney did not engage in a protected activity when she took sick leave and insisted that the FMLA not apply.[4]

Even if Ms. Ney's leave was protected under the FMLA, her prima facie case would still fail because there is no evidence of a causal connection between her leave in 1999 and her termination in May 2003. This temporal span is far too long to suggest any connection between the two events. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (noting that a three-month period between protected activity and adverse action is insufficient, standing alone, to show causation). Apparently aware of the lack of independent causal evidence, she attempts to shorten the temporal span between protected activity and adverse

---

[4]    Ms. Ney claims that she rejected FMLA coverage only because the City was threatening to withhold pay if she took the time off. While this claim might be actionable as an attempt to interfere with the exercise of Ms. Ney's FMLA rights, *see* 29 U.S.C. § 2615(a)(1), she did not assert an interference claim in the pretrial order and thereby waived any such claim. *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1276-77 (10th Cir. 2005).

action. She contends that the City's adverse action is the harassment she allegedly endured upon returning from leave in 1999. She also contends that the protected activity is leave she took in January 2003. But neither the harassment nor the 2003 leave were mentioned in the pretrial order. *See* Aplt. App. at 27-28, 30-33, 35-36. Claims omitted from the pretrial order are waived. *Cortez*, 460 F.3d at 1276-77.

### B. Pretext

If we proceed even further to assume that Ms. Ney has made out a prima facie case of retaliation, there is no triable issue of fact as to pretext, the final step of the burden-shifting analysis. An employee "can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006) (quotation omitted). "A pretext argument requires the court to examine the facts as they appear to the person making the decision, to determine whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007) (quotation omitted). Although we "must resolve all doubts in [the employee's] favor, mere conjecture that the employer's explanation is pretext is insufficient to

defeat summary judgment." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007) (quotation and alteration omitted).

The City asserts that Ms. Ney was fired for insubordination in refusing to meet with Mr. Dinkel. Ms. Ney argues that the City's proffered reason is pretextual because Mr. Dinkel had agreed to allow her to have a support person present during meetings, and there was no support person available for a meeting on May 8 or May 12. It is undisputed, however, that there was a support person available on May 9, and Ms. Ney made no attempt to meet with Mr. Dinkel that day. Further, Mr. Dinkel could have reasonably concluded that Ms. Ney no longer had any right to insist on a support person's attendance, given that in the only meeting in which Ms. Ney brought a support person, that person refused to abide by the condition under which he was allowed to be present. We conclude that no rational factfinder could discredit the City's proffered reason for terminating Ms. Ney.

Summary judgment was properly entered on Ms. Ney's FMLA-retaliation claim.

### III. Equal Protection

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause prohibits

state and local governments from treating similarly situated persons differently." *Rector v. City & County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003).

Ms. Ney argues that she was treated differently than male employees, who committed worse infractions than she did but without suffering any adverse consequences. Specifically, she asserts that a police officer "was having sex in the back seat of [a] patrol car" and that "[m]ale employees could freely curse all they wanted to." Aplt. Br. at 44-45.[5] Ms. Ney's equal-protection claim fails for two reasons.

First, Ms. Ney is not similarly situated to the police officer who allegedly had sex in his patrol car. No adverse action was taken against the officer because he denied the incident and Mr. Doze could not, after an investigation, confirm that it even occurred. Ms. Ney's refusal to meet with her superiors, on the other hand, was apparent. She is also not similarly situated to the cursing employees, as her refusal to meet with her superiors constitutes far greater misconduct.

Second, the *McDonnell Douglas* burden-shifting framework applies to equal-protection claims in the employment context. *See Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1283 (10th Cir. 2003). As we concluded above

---

[5] Ms. Ney also asserts that a second police officer "violated citizen's civil rights on a regular bases [sic], slashed the tires of a police car and committed serious violations of the law." Aplt. Br. at 45. But that officer was, like Ms. Ney, terminated for his misconduct.

regarding Ms. Ney's FMLA-retaliation claim, there is no triable issue of pretext surrounding her termination.

Summary judgment was properly entered against Ms. Ney on her equal-protection claim.

## IV.  Procedural Due Process

Ms. Ney argues that her procedural-due-process rights were violated because she was not given a pre-termination hearing and "not allowed to present witnesses or evidence" when the city council reviewed her termination.  Aplt. Br. at 48.  "In determining whether an individual has been deprived of [the Fourteenth Amendment] right to procedural due process, courts must engage in a two-step inquiry:  (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."  *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  We conclude that Ms. Ney's claim fails at step one.

"[U]nder Kansas law, public employment is presumptively at-will" and does not qualify for procedural-due-process protections.  *Id.* at 1136.  Ms. Ney asserts, however, that she had a property interest in her City employment because a former city manager once said that she was a "permanent employee" and because she was not required to sign an at-will agreement that other employees signed.  Aplt. App. at 98-99.  While a protected-property interest can arise from an implied or written agreement that the employee will not be terminated except

for cause, *see Farthing*, 39 F.3d at 1135, no such agreement is present here. Ms. Ney references no written agreement. And to establish an implied agreement, she must show "[a] mutual intent to form a contract." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1492 (10th Cir. 1995). The former city manager's statement that Ms. Ney was a "permanent employee" means only that she had "a steady job of some permanence, as distinguished from a temporary job or temporary employment." *Johnson v. Nat'l Beef Packing Co.*, 551 P.2d 779, 782 (Kan. 1976); *see also Wiggins v. Housing Auth. of Kan. City*, 916 P.2d 718, 721 (Kan. Ct. App. 1996). The fact that Ms. Ney was not required to sign an at-will agreement when other employees were, does not by itself show the City's intent to transform her at-will employment into employment terminable only for cause. Much more is necessary to show an implied agreement. *See Panis*, 60 F.3d at 1492-93 (listing various factors relevant to "implied in fact" agreements, including "written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced"). Even if the City's failure to have her sign an at-will agreement led her to believe that her employment was something

more than at-will, "[a] unilateral expectation on the part of the employee does not create an implied-in-fact contract for continued employment." *Id.* at 1492.

Summary judgement was properly entered on Ms. Ney's procedural-due-process claim.

## V.  Substantive Due Process

"A public employee with a property interest in continued employment has a substantive-due-process right not to be terminated for arbitrary or capricious reasons." *Darr*, 495 F.3d at 1257.  Because Ms. Ney had no property interest in her employment with the City, her claim fails.  We also conclude that even if she had a protected interest, no reasonable jury could find that her termination for refusing to meet with her superiors was "arbitrary, irrational, or shocking to the contemporary conscience." *Id.*  "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Curtis*, 147 F.3d at 1215 (quotation and citation omitted).

Accordingly, the district court did not err in granting summary judgment against Ms. Ney on her substantive-due-process claim.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge